USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/16/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
NINO DZGANIYA,  :
:
                Plaintiff,  :
:
     -v -  :   Case No. 1:17-cv-04525-GHW
:
COHEN EHRENFELD POMERANTZ &  :
TENENBAUM, LLP AND SIMILIS  :   MEMORANDUM OPINION
MANAGEMENT LLC,  :   AND ORDER
:
              Defendants.  :
---------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

      In July 2016, Plaintiff's landlord, through its attorneys, initiated eviction proceedings against her in the Civil Court of the City of New York based on her alleged failure to pay rent. The amounts listed as past due in the rent demand and housing court petition were calculated using an accounting method known as "rent jamming" and did not reflect the actual months for which rent was due, nor the correct balance owed. Plaintiff's landlord and its attorneys also sought attorneys' fees, although no provision existed in Plaintiff's lease that would provide a legal basis for recovery of those fees. These rent-jamming and fee-seeking practices are at the heart of the lawsuit that Plaintiff has brought in federal court. She asserts a claim under the Fair Debt Collection Practices Act ("FDCPA") against her landlord's attorneys, the law firm of Cohen Ehrenfeld Pomerantz & Tenenbaum, LLP ("CHEPT"). Plaintiff also asserts claims under New York's General Business Law ("GBL") against CHEPT and her landlord, Similis Management LLC. Similis has moved to dismiss the only claim against it, asking that the Court decline to exercise supplemental jurisdiction. Because the state claim would substantially predominate over the federal claim if both were to proceed before this Court, the Court declines to exercise supplemental jurisdiction over the claim

against Similis. The Court also declines to exercise supplemental jurisdiction over the GBL claim asserted against CHEPT.

I. BACKGROUND[1]

### A. Defendants' Attempts to Collect Rent from Plaintiff

Plaintiff Nino Dzganiya, a 56-year-old Georgian immigrant employed as a caregiver for children, moved into a rent-stabilized apartment located at 31 Bennett Avenue, Apartment 4 in Manhattan in May 2014. First Amended Complaint, ECF No. 32 ("FAC") ¶¶ 10-11. Plaintiff entered into a standard "Blumberg" form, one-year lease with her new landlord, Similis, which provided for a monthly rent of $1,625. *Id.* ¶¶ 11, 13, 45.

The apartment was in poor condition when Plaintiff moved in. *Id.* ¶ 15. The walls required painting and plastering; floor tiles were loose; the bathtub was chipped and stained; the shower head fell out of the socket; the toilet seat detached from the toilet; there was mold in the kitchen cabinets; and the oven did not work. *Id.* Similis and its superintendent explained that Plaintiff was required to pay them a "gift" in order to have her apartment repaired or a unit in better condition offered to her. *Id.* ¶ 16. Despite Plaintiff's payment of $800 to Similis and $700 to the superintendent, adequate repairs were never made, nor was Plaintiff offered a better apartment. *Id.* ¶¶ 17-21.

When Plaintiff's lease expired in April 2015, she was not offered a rent stabilized lease renewal. *Id.* ¶ 23. Plaintiff made several requests for a renewal, but by March 2016 still had not received the renewal lease. *Id.* ¶ 24. Plaintiff retained an attorney to assist her in obtaining the renewed lease and then paid her March rent in cash, without receiving a receipt. *Id.* ¶¶ 25, 71. The

---

[1] Unless otherwise noted, the facts are taken from the first amended complaint and the exhibits thereto. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." (citations omitted)). The alleged facts are accepted as true for the purposes of this motion. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

following month, Similis provided Plaintiff with a renewal lease. *Id.* ¶ 26. Shortly thereafter, however, Similis's managing agent Chaim Englander informed Plaintiff that he was displeased that she had hired an attorney and was "causing trouble." *Id.* ¶ 27. Englander warned Plaintiff that he would evict her for non-payment of rent. *Id.* When Plaintiff stated that she was not behind in her rent payments, Englander reminded her that she paid her rent in cash, had no proof of payment, and that a housing court would believe him rather than her. *Id.* ¶ 28.

Plaintiff did not pay her rent in April 2016. FAC, Ex. D. However, she paid a total of $3,240 in May. *Id.* Plaintiff paid her June 2016 rent by check, a check which Similis cashed on June 14. FAC ¶ 40. Nonetheless, true to Englander's word, Similis retained CHEPT to initiate eviction proceedings on its behalf based on Plaintiff's failure to pay rent. *Id.* ¶ 29. CHEPT prepared a rent demand on June 16, 2016, two days after the firm's client had cashed Plaintiff's rent check. *Id.* ¶ 32. That demand indicated that Plaintiff owed the entire $1,625 rent for June and a $110 balance from May's rent. *Id.* ¶ 34. The rent demand reflected the use of "rent jamming," a common accounting practice used in housing court. *Id.* ¶¶ 74, 77. A rent collector "rent jams" by dividing the total sum of rent arrears by the monthly rent to determine how many months of rent are owed. *Id.* ¶ 75. The collector then prepares a demand that indicates that rent is due for that number of the most recent months, regardless of whether the tenant has paid rent in those months. *Id.* In this way, rent jamming disregards the date on which the arrears actually accrued and whether any rent payments were made for the allegedly unpaid months. *Id.* The rent demand prepared by CHEPT using this rent-jamming method was never served on Plaintiff. *Id.* ¶ 59.

Plaintiff subsequently paid her July rent by check, which was cashed by Similar on July 7, 2016. *Id.* ¶ 40. Twelve days later, on July 19, 2016, CHEPT prepared a housing court petition on Similis's behalf, alleging that Plaintiff owed $110 for May 2016, $1,625 for June 2016, $1,625 for July 2016 rent, and demanding $260 in attorneys' fees. *Id.* ¶¶ 36, 38. The petition was filed with the

3

New York County Civil Court on July 25, 2016, but was never served on Plaintiff. *Id.* ¶ 59; FAC, Ex. C. Instead, Plaintiff learned of the pending eviction action when she received notice from the court the month after the petition was filed. FAC ¶ 62. Plaintiff paid her rent for August and September 2016 in cash and was not provided a receipt. *Id.* ¶ 71.

Plaintiff initially represented herself in the housing court proceeding. *Id.* ¶ 63. She retained an attorney in October 2016, however, and through counsel moved to dismiss the proceeding. *Id.* ¶¶ 63-64. Plaintiff paid her rent for October and November 2016 by checks that were given to Defendants in court and later cashed by Similis. *Id.* ¶¶ 69-70. In December 2016, CHEPT filed a motion seeking leave to amend the petition to seek a total of $8,235 in rent arrears. *Id.* ¶ 65. That amount consisted of $1,625 per month for March, August, September, October, and November 2016, and $110 for July 2014 through April 2016 arrears, accounting for an accumulation of small balances due from months in which Plaintiff paid $1,620 instead of $1,625. *Id.* With that motion, CHEPT provided the housing court with a ledger of Plaintiff's rent payments, which showed a total owed balance of $1,735 as of July 2016—not the $3,620 originally identified in the petition—and did not account for the March, August, September, October, or November 2016 rent payments. *Id.* ¶ 66; FAC, Exs. C, D.

The housing court denied Plaintiff's motion to dismiss, explaining that a rent demand need not be entirely accurate and that factual disputes existed regarding the receipt of rent for months in which Plaintiff paid in cash. *Id.* ¶ 101. During her preparation for trial, which was originally scheduled to begin on May 16, 2016, Plaintiff discovered that Similis had been overcharging her for rent. *Id.* ¶ 102-03. She moved for leave to amend her answer to add a counterclaim based on Similis's charge of rent in excess of the amount permitted under the rent stabilization laws. *Id.* ¶ 102. Similis later substituted counsel from the CHEPT law firm with attorneys from Kucker &

4

Bruh, LLP. *Id.* ¶ 104. The housing court proceeding remained ongoing as of the date of the complaint in this matter. *Id.* ¶ 105.

Plaintiff has suffered emotional distress as a result of Defendants' rent-jamming practice. *Id.* ¶ 108. Plaintiff suffers from continual anxiety and lost sleep. *Id.* ¶ 110. Because of the rent-jamming calculations, Plaintiff was unable to properly defend herself before the petition was filed in housing court. *Id.* ¶ 108. She has been exposed to derogatory credit reporting and to being "blacklisted" by tenant screening bureaus.[2] *Id.* And because Plaintiff was forced to take too much time off to attend court proceedings, one of the families for whom Plaintiff worked as a caregiver terminated her employment. *Id.* ¶ 109.

### B. Defendants' Routine Rent Collection Practices

Similis owns at least two residential apartment buildings in Manhattan. *Id.* ¶ 46. All, or nearly all, of the seventy-three apartments are rent stabilized, and Similis generally uses the standard form lease that Plaintiff executed. *Id.* ¶¶ 46-47.

CHEPT is a regular patron of the housing court, with over 300 cases pending as of the filing of the complaint in this matter. *Id.* ¶¶ 30, 58. Similis is also no stranger to the housing court; it has filed ninety-six landlord-tenant summary proceedings in the county of New York, a majority of which are based on non-payment of rent. *Id.* ¶¶ 79-80. The six most recent cases that are publicly available are all non-payment proceedings in which Similis was represented by CHEPT. *Id.* ¶¶ 81-82. Each of the tenants in those cases, like Plaintiff, was a low-income, rent-stabilized tenant, had entered into a rent-stabilized lease with Similis, and was *pro se* when the cases were initially filed. *Id.* ¶¶ 51-53. The petitions filed in each of those six cases reflected past-due rent calculations that were

---

[2] "'Blacklisting' is a practice where commercial tenant screening bureaus purchase electronic housing court case data from the Office of Court Administration [and] use this data to prepare so-called 'tenant screening reports' based on that data, and then sell such reports to prospective landlords." *Buyers and Renters United to Save Harlem v. Pinnacle Grp. N.Y. LLC*, 575 F. Supp. 2d 499, 504 n.1 (S.D.N.Y. 2008).

done in accordance with rent-jamming accounting. *Id.* ¶ 84. The petitions also sought attorneys' fees, despite the lack of a provision for such fees in the rent-stabilized leases. *Id.* ¶¶ 54-55. In fact, both Defendants routinely seek attorneys' fees, regardless of the lease provisions, and rely on rent-jamming calculations in their housing court proceedings. *Id.* ¶¶ 42-43, 57, 76, 87.

Plaintiff claims that rent jamming is "materially misleading" because it may cause tenants to think that their landlord seeks to collect from them portions of their rent covered by rent subsidies. *Id.* ¶ 89. According to Plaintiff, rent jamming may also lure tenants into ignoring rent demands, particularly when a demand is served on a tenant shortly after the tenant has paid that month's rent. *Id.* ¶ 91. Rent jamming also deprives tenants of fair opportunities to resolve non-payment claims prior to litigation, opportunities that are valuable to avoid tenant blacklisting. *Id.* ¶ 93.

Plaintiff also asserts that rent jamming taxes the housing court and provides landlords and their attorneys with tactical advantages. *See id.* ¶¶ 92-98. By relying on rent jamming to calculate the rent that is due, landlords and their attorneys shift the burden of reviewing rent ledgers to the court and tenants. *Id.* ¶ 96. Landlords and their counsel also gain strategic advantages because rent jamming tends to delay the negotiation of rent disputes until a housing court petition has been filed, where tenants are at greater risk of eviction; the existence of any viable laches defense is obscured; and the likelihood of spoliation of evidence increases. *Id.* ¶¶ 92, 97-98.

**C. Procedural History**

Plaintiff commenced this action on June 15, 2017. ECF No. 1. Defendant CHEPT filed an answer and cross-claims against Similis on July 28, 2017, and filed an amended answer without cross-claims on August 8, 2017. ECF Nos. 15, 17. With Defendants' consent, Plaintiff filed her first amended complaint on September 28, 2017. ECF No. 32. In her amended complaint, Plaintiff asserts a claim under the FDCPA, 15 U.S.C. § 1692, *et seq.*, against CHEPT only. Plaintiff also asserts claims under GBL § 349 against both CHEPT and Similis. CHEPT answered the amended

6

complaint on October 6, 2017. ECF No. 33. On November 7, 2017, Similis moved to dismiss the amended complaint. ECF No. 40. Plaintiff filed her opposition to that motion on November 28, 2017, and Similis filed a reply on December 5, 2017. ECF Nos. 41, 42. After briefing was completed, the parties filed various letters alerting the Court to supplemental authority in support of their respective positions. *See* ECF Nos. 45, 46, 55.

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). However,

> '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' A complaint must therefore contain more than 'naked assertion[s] devoid of further factual enhancement.' Pleadings that contain 'no more than conclusions . . . are not entitled to the assumption of truth' otherwise applicable to complaints in the context of motions to dismiss.

7

*DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87-88 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678-79). Thus, a complaint that offers "labels and conclusions" or "naked assertion[s]" without "further factual enhancement" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).

## III.  DISCUSSION

The parties to this action are non-diverse, and the GBL claim is before the Court as a pendent claim. Similis's arguments for dismissal of the GBL claim, the only claim against it, are two-fold: (1) the Court should decline to exercise supplemental jurisdiction over the claim, and (2) in the event the Court elects to exercise jurisdiction over the GBL claim, Plaintiff's allegations nonetheless fail to state a claim. The Court agrees with Similis's first argument and declines to exercise supplemental jurisdiction over the GBL claim under 28 U.S.C. § 1367(c)(2). In the absence of jurisdiction over that claim, the Court dismisses it without addressing its merits.

### A.  Supplemental Jurisdiction over Plaintiff's GBL § 349 Claim

"It is a principle of first importance that the federal courts are tribunals of limited subject matter jurisdiction." *Wright v. Musanti*, 887 F.3d 577, 583 (2d Cir. 2018) (quoting 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3522 (3d ed. 2017)). Therefore, a court's subject matter jurisdiction is a "threshold inquiry" that must be answered before addressing the merits of a claim. *Blumatte v. Quinn*, 521 F. Supp. 2d 308, 310 (S.D.N.Y. 2007) (citing *Gutierrez v. Fox*, 141 F.3d 425, 426 (2d Cir. 1998)).

Article III of the Constitution vests federal district courts with original jurisdiction over certain types of cases, including cases "arising under" federal law. U.S. Const. art. III, § 2. A case arises under federal law "when the plaintiff's statement of his own cause of action shows that it is based upon [federal law]." *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (alteration in original) (quoting *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)).

When a district court has original jurisdiction over claims in a case, it "shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy under Article III.'" *F5 Capital v. Pappas*, 856 F.3d 61, 77 (2d Cir. 2017) (quoting 28 U.S.C. § 1367(a)); *see United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) ("Pendent jurisdiction . . . exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority,' and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" (quoting U.S. Const. art. III, § 2))). Claims are considered "'part of the same case or controversy' if they 'derive from a common nucleus of operative fact.'" *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d Cir. 2011) (quoting *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004)).

The decision to exercise supplemental jurisdiction over a state law claim is by nature discretionary. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997). Where claims satisfy the "same case or controversy" test under 28 U.S.C. § 1367(a), however, "the discretion to decline supplemental jurisdiction is available only if founded upon an enumerated category of subsection 1367(c)." *Shahriar*, 659 F.3d at 245 (quoting *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998)). Even then, "where at least one of the subsection 1367(c) factors is applicable, a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *Gibbs*, 383 U.S. at 726: economy, convenience, fairness, and comity." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004). Subsection 1367(c) permits a court to decline to exercise supplemental jurisdiction over a claim under subsection (a) if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has

9

dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

### 1. The Claims Are the Same Constitutional Case

Here, the Court has original jurisdiction over Plaintiff's FDCPA claim against CHEPT. *See* 28 U.S.C. § 1331. Plaintiff alleges violations of three particular provisions of the FDCPA: (1) section 1692d, prohibiting any conduct by a debt collector "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt," 15 U.S.C. § 1692d; (2) section 1692e, prohibiting a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," 15 U.S.C. § 1692e; and (3) section 1692f, prohibiting a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C. § 1692f.

GBL § 349 declares unlawful any "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 349(a). To successfully assert a claim under § 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017) (quoting *City of New York v. Smokes-Spirits.com, Inc.*, 12 N.Y.3d 616, 621 (2009)).

Plaintiff alleges that CHEPT violated the asserted provisions of the FDCPA by using rent jamming in calculating and stating the amount of rent due, in both the rent demand and the petition filed with the housing court. FAC ¶ 117. Plaintiff's FDCPA claim is also premised on CHEPT's demand for attorneys' fees, or "fee seeking," despite the lack of an attorneys' fees provision in Plaintiff's lease. *Id.* These facts underlie the GBL claim asserted against both Defendants. *See id.* ¶¶

10

125-26. Thus, the events giving rise to both claims—the preparation of the rent demand and housing court petition—are the same.

Also, the federal and state claims share some common legal ground. The GBL claim and the FDCPA claim brought under section 1692e both involve deceptive practices in the collection of rent. *See* 15 U.S.C. § 1692e; N.Y. Gen. Bus. Law § 349(a). Both of these claims also rely on an objective standard to determine whether the rent demand and housing court petition were deceptive. *See Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) ("'Deceptive acts' [under GBL § 349] are defined objectively [ ] as acts likely to mislead a reasonable consumer acting reasonably under the circumstances." (second alteration in original) (quoting *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003))); *Taylor v. Fin. Recovery Servs., Inc.*, 886 F.3d 212, 214 (2d Cir. 2018) ("[C]ollection notices [under the FDCPA] are to be looked at from the perspective of the 'least sophisticated consumer.'" (citation omitted)). Therefore, to prove either a violation of section 1692e of the FDCPA or of GBL § 349, Plaintiff would need to develop evidence demonstrating that an objective consumer would be misled by the rent demand and housing court petition.

To the extent that Similis's improper fee seeking forms the basis for the GBL claim, that claim overlaps to an extent with the federal claim brought under section 1692f. Section 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Listed as a specific type of conduct that violates this section is the "collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). As alleged by Plaintiff, Similis, represented by CHEPT, sought attorneys' fees in the housing court proceeding against her despite the fact that her lease

11

contained no provision permitting such fees. Therefore, evidence of that conduct would likely suffice to establish a section 1692f claim and would also be material to the GBL claim.[3]

Because of these factual and legal congruencies, Plaintiff "would ordinarily be expected to try [both claims] in one judicial proceeding." *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011) (quoting *Gibbs*, 383 U.S. at 725). Accordingly, the claims form one constitutional case. *See id.* at 332-33 (concluding that state and federal claims constituted the same case when they all involved an alleged failure to reimburse plaintiff for medical services provided to beneficiaries of an ERISA plan); *Jones*, 358 F.3d at 213-14 (finding state-law counterclaims constituted the same "case" under Article III as the federal claim when they all bore "a sufficient factual relationship" and originated from the same decision by plaintiff).

### 2. The GBL Claim Would Substantially Predominate over the FDCPA Claim

Much like Defendants' alleged conduct, however, the apparent propriety of pendent jurisdiction is deceptive. The GBL claim would in fact substantially predominate over the FDCPA claim were the Court to exercise jurisdiction over it. Therefore, the Court declines to exercise supplemental jurisdiction over the GBL claim against Similis. *See* 28 U.S.C. § 1367(c)(2).[4]

---

[3] It is not apparent to the Court from the amended complaint or the parties' arguments that there is any factual overlap between the GBL claim against Similis and the claim brought under section 1692d of the FDCPA. That section provides that "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The non-exhaustive list of conduct that violates this section includes the use of "obscene or profane language," "violence or other criminal means to harm" the debtor, the publication of a list of non-paying consumers, advertising the sale of a debt in order to coerce payment from a debtor, and conduct related to the use of a telephone to annoy or harass a debtor. *See id.* Misrepresenting the amounts due, an unlawful practice regulated by section 1692e, and seeking amounts not lawfully collectable, conduct regulated by section 1692f, do not fit within the type of conduct contemplated under section 1692d.

[4] Similis argues that the GBL claim against it raises a novel and complex issue of state law such that pendent jurisdiction should not be exercised over the claim under 28 U.S.C. § 1367(c)(1). For support, Similis relies heavily on *Lautman v. 2800 Coyle St. Owners Corp.*, No. 13-cv-967 (ARR) (VVP), 2014 WL 2200909 (E.D.N.Y. May 23, 2014). *Lautman* noted that the section 349 claim at issue there, which involved a landlord-tenant rent dispute, raised "novel issues in an undeveloped area of law regarding whether New York's consumer protection statute would apply in this sort of landlord-tenant rent dispute." 2014 WL 2200909, at *8. In opposing Similis's motion, Plaintiff cites to more recent cases that have found a GBL claim stated in the context of a landlord-tenant dispute. *See, e.g., Sanchez v. Ehrlich*, No. 16-cv-8677 (LAP), 2018 WL 2084147, at *11 (S.D.N.Y. Mar. 29, 2018) (concluding that plaintiff had stated a claim under GBL § 349 when plaintiff asserted a claim on her behalf but also pleaded that defendants engaged in a pattern or

In determining whether the GBL claim substantially predominates over the federal claim, the fact that two defendants have been named in the former and only one in the latter is not important. *See Shahriar*, 659 F.3d at 246 ("Predomination under section 1367 generally goes to the type of the claim, not the number of parties involved." (quoting *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 980 (7th Cir. 2011))). Rather, it is the nature of the claims that the Court considers. *Id.*

Despite the overlap in the claims, as discussed above, the facts material to the GBL claim are indeed much broader in scope than those that support the FDCPA claim. The threshold issue to be determined in the GBL claim is whether the conduct at issue is "consumer oriented." *See* N.Y. Gen. Bus. Law § 349(a); *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 455 (2d Cir. 2008) ("[T]he gravamen of a § 349 claim is consumer injury or harm to the public interest." (internal quotation marks and citation omitted)), *rev'd on other grounds sub nom.*, *Hemi Grp., LLC v. City of New York*, 559 U.S. 1 (2010); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 24 (1995) ("As shown by its language and background, section 349 is directed at wrongs against the consuming public."). To satisfy this element, a plaintiff "must demonstrate that the acts or practices have a broader impact on consumers at large." *Oswego*, 85 N.Y.2d at 25. Such public impact may be demonstrated "by showing that the conduct at issue 'potentially affects similarly situated consumers.'" *RFP LLC v. SCVNGR, Inc.*, 788 F. Supp. 2d 191, 199 (S.D.N.Y. 2011) (quoting *Wilson v. Northwestern Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010)). Where conduct is not inherently

---

practice of bringing housing court proceedings against low-income tenants for rent they did not owe); *Torres v. Gutman, Mintz, Baker & Sonnenfeldt P.C.*, No. 17-cv-4109 (KAM) (CLP), 2018 WL 1545687, at *3 (E.D.N.Y. Mar. 29, 2018) (noting, in evaluating an application to proceed *in forma pauperis*, that plaintiff had stated a claim under GBL § 349 by pleading "numerous deceptive acts and practices allegedly committed by each defendant . . . over the course of several years"); *People v. Marolda Props., Inc.*, Index No. 452118/16 (slip op. at 10-12) (Sup. Ct. Nov. 27, 2017) (denying motions to dismiss where complaint alleged "numerous types of illegal or fraudulent acts in an effort to pressure rent-regulated tenants to vacate their apartments"). Accordingly, it is not so clear to this Court that Plaintiff's GBL claim presents a novel question of New York state law. The Court need not decide this, however, because it finds cause to decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(2).

13

consumer oriented, "a plaintiff must establish facts showing injury or potential injury to the public." *Wilson*, 625 F.3d at 65.

That a rent dispute between a tenant and her landlord is inherently consumer oriented is not well established. The New York Court of Appeals has yet to comment on this issue, and other courts have dismissed GBL claims brought by tenants on the basis that the underlying conduct amounts to nothing more than a private transaction. *See, e.g.*, *Lautman v. 2800 Coyle St. Owners Corp.*, No. 13-cv-967 (ARR) (VVP), 2014 WL 2200909, at *7-8 (E.D.N.Y. May 23, 2014) (dismissing claim under GBL § 349 when plaintiff's allegations regarding a housing court proceeding did not involve "the deceptive consumer-oriented type of conduct targeted by the statute"); *Collazo v. Netherland Prop. Assets LLC*, Index No. 157486/2016, 2017 WL 947618 (Sup. Ct. Mar. 7, 2017) (dismissing GBL § 349 claim premised on rent overcharge because the claim "relate[d] to the private dispute between a tenant and a landlord concerning a lease"), *aff'd*, 64 N.Y.S.3d 537 (1st Dep't 2017); *Cooper v. 85th Estates Co.*, 72 N.Y.S.3d 516, ___, 2017 WL 5934003, at *11 (Sup. Ct. 2017) (recognizing that "[n]ot all interactions between landlord and tenant . . . satisfy the elements of GBL § 349" and stating that "allegations regarding how each plaintiff's initial rent was established would appear to be a private dispute between landlord and tenant, rather than a matter aimed at the general public"); *Nezry v. Haven Ave. Owner LLC*, 958 N.Y.S.2d 62, ___, 2010 WL 3338545, at *2 (Sup. Ct. 2010) (noting that case law "expressly holds that GBL § 349 does not apply to private landlord-tenant disputes"); *see also Aguaiza v. Vantage Props., LLC*, 893 N.Y.S.2d 19, 20 (1st Dep't 2010) (affirming dismissal of GBL § 349 claim because the plaintiff's allegations "presented only private disputes between landlords and tenants, and not consumer-oriented conduct aimed at the public at large").

In light of this, to prove her GBL claim against Similis, Plaintiff would be required to produce evidence that Similis's alleged conduct has injured, or could potentially injure, the public at large. *Wilson*, 625 F.3d at 65. She has already anticipated this, alleging in her complaint that Similis

has filed ninety-six housing court petitions largely based on non-payment, that it regularly demands attorneys' fees from rent-stabilized tenants, that nearly all of its tenants are rent-stabilized, and that Similis routinely engages in rent jamming. FAC ¶¶ 46-47, 76, 79-80. Discovery related to the GBL claim likely will be aimed at developing evidentiary support for these allegations, which extend well beyond the one housing court proceeding brought against Plaintiff.[5]

To establish a claim under the FDCPA, on the other hand, a plaintiff must prove that (1) the plaintiff is a consumer; (2) the defendant is a debt collector; and (3) the defendant committed some act or omission that violates the FDCPA. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 134 (2d Cir. 2010). Assuming for purposes of this motion that Plaintiff is a consumer and CHEPT is a debt collector under the FDCPA, Plaintiff will need to prove that CHEPT violated at least one of the three provisions of the Act as pleaded in the amended complaint. None of those provisions requires a plaintiff to establish conduct by the debt collector that is targeted at individuals beyond the plaintiff herself. *See* 15 U.S.C. §§ 1692d, 1692e, 1692f. Evidence in support of the FDCPA claim, therefore, will need to be focused only on Plaintiff's housing court proceeding. Consequently, the facts regarding Similis's larger rent-jamming and fee-seeking practices will not necessarily be brought before the Court. *See Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000) (noting that the Second Circuit has "routinely upheld the exercise of pendent jurisdiction where the facts underlying the federal and state claims substantially overlapped or where presentation of the

---

[5] Plaintiff's allegations may be viewed as suggesting a pattern or practice of rent jamming and improper fee seeking by Similis. "Consumer-oriented conduct does not require a repetition or pattern of deceptive behavior." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995). Nonetheless, to succeed on her GBL claim against Similis, Plaintiff would be required to demonstrate that these alleged practices have an impact extending beyond her individual housing court proceeding. *See City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 455 (2d Cir. 2008).

15

federal claim necessarily brought the facts underlying the state claim before the court" (citations omitted)).[6]

The GBL claim also requires a plaintiff to prove an injury beyond a violation of the statute, whereas the FDCPA does not. *Compare Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000) (stating that a GBL plaintiff must prove "'actual' injury to recover under the statute, though not necessarily pecuniary harm" (citation omitted)), *with Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 307 (2d Cir. 2003) (holding that a FDCPA plaintiff need not show "actual damages," but that a showing that the defendant "attempted to collect money in violation of the FDCPA" suffices); *see also Papetti v. Does 1-25*, 691 F. App'x 24, 26 (2d Cir. 2017) (finding that plaintiff's allegations of violations of sections 1692e and g of the FDCPA by themselves "entail[ed] the concrete injury necessary for standing" (quoting *Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2d Cir. 2016))). Therefore, to prove her GBL claim, Plaintiff would need to develop evidence of her injuries, injuries which she has alleged to include emotional distress, anxiety, loss of sleep, her inability to properly defend herself in the housing court proceeding, and termination of her employment. FAC ¶ 109. Because that evidence is not required to establish the FDCPA claim, it would not necessarily be presented to the Court in connection with the federal claim.[7]

Also unlike the FDCPA claim, the GBL claim carries with it the potential for punitive damages. *See* 15 U.S.C. § 1692k (limiting damages recoverable by an individual plaintiff under the FDCPA to actual damages, "such additional damages as the court may allow, but not exceeding $1,000," and the costs and fees incurred in a successful enforcement action); *Koch v. Greenberg*, 14 F.

---

[6] Similarly, the facts regarding the consumer-oriented nature of CHEPT's alleged rent jamming and fee seeking are not likely to be material to the FDCPA claim.

[7] Actual damages are available under the FDCPA. *See* 15 U.S.C. § 1692k. Therefore, Plaintiff may present evidence of her actual damages in connection with that claim. Nonetheless, because it is not a required element, as it is under the GBL, Plaintiff will not be obligated to develop evidence of her actual damages in proving her federal claim against CHEPT.

16

Supp. 3d 247, 273 (S.D.N.Y. 2014) (affirming award of punitive damages in connection with GBL § 349 claim); *Wilner v. Allstate Ins. Co.*, 893 N.Y.S.2d 208, 218 (2d Dep't 2010) (same). A plaintiff may be entitled to an award of punitive damages under New York law where she establishes "conduct which is aimed at the public generally, involves a fraud evincing a high degree of moral turpitude, and demonstrates such wanton dishonesty as to imply a criminal indifference to civil obligations." *Manning v. Utilities Mut. Ins. Co.*, 254 F.3d 387, 400 (2d Cir. 2001) (citation and internal quotation marks omitted); *accord Evans v. Ottimo*, 469 F.3d 278, 283 (2d Cir. 2006); *Rocanova v. Equitable Life Assurance Soc'y of the U.S.*, 83 N.Y.2d 603, 613 (1994). In her amended complaint, Plaintiff alleges that Similis acted "willingly and/or knowingly." FAC ¶ 128. She also seeks punitive damages. *Id.* ¶ 130. Therefore, it is likely that the evidence Plaintiff would present to the Court in connection with her GBL claim would include evidence to establish the "high degree of moral turpitude" and "wanton dishonesty" that is necessary to sustain an award of punitive damages. *Manning*, 254 F.3d at 400. Evidence presented in support of claimed punitive damages could also be expected to include details regarding the financial capacity of Similis to pay such an award. Because the FDCPA does not permit the award of punitive damages, that evidence would not necessarily be presented to the Court in the absence of pendent jurisdiction over the state claim.

Plaintiff contends that the GBL claim will not predominate because the FDCPA claim also involves evidence that CHEPT served pleadings directly on her despite her representation by counsel. *See* FAC ¶¶ 67, 117. To the extent that serving pleadings in violation of New York's Rules of Professional Conduct can form the basis of a FDCPA claim, the evidence needed to prove that claim will likely be slight. Moreover, it is clear from the amended complaint that the meat of Plaintiff's claims is not the service of pleadings issue, but instead the widespread rent-jamming and fee-seeking practices.

17

In essence, the evidence required to prove Plaintiff's FDCPA claim is limited to the accuracy of, and the legal basis for, the debt sought to be collected by the rent demand and petition against Plaintiff individually and the service of pleadings on her directly. Proof of the GBL claim, on the other hand, would require additional evidence of Similis's business practices at large. Resolution of the FDCPA claim, therefore, would not decide the GBL claim. *See Shahriar*, 659 F.3d at 246 (noting as a reason for the court's conclusion that state claims did *not* substantially predominate over federal claims that a determination of claims brought under the federal act "may decide" claims brought under the state statute). The survival of the GBL claim likely would also result in the presentation of evidence in support of punitive damages. In short, permitting Plaintiff to litigate both claims in this court would be tantamount to "allowing a federal tail to wag what is in substance a state dog." *Jacobs v. Castillo*, 612 F. Supp. 2d 369, 374-75 (S.D.N.Y. 2009) (citation omitted).

### 3. *Gibbs* Analysis

Having concluded that the GBL claim would substantially predominate over the FDCPA claim, the Court next analyzes the *Gibbs* factors. *See Jones*, 358 F.3d at 214. This case has been pending in this Court since June 2017. The case has not substantially advanced beyond the pleading stage, however. A Rule 16 discovery schedule was entered on September 15, 2017 (ECF No. 28), but the deadlines for completion of all discovery were later adjourned pending resolution of this motion (ECF No. 39). The parties have raised no discovery disputes with the Court. Nor has the Court entertained substantive arguments from the parties outside of those made in connection with this motion. This Court is, therefore, no more familiar with the facts and legal issues of this case than any court would be at the pleading stage. Judicial economy considerations thus weigh in favor of declining supplemental jurisdiction. *See Chenensky v. N.Y. Life Ins. Co.*, 942 F. Supp. 2d 388, 393 (S.D.N.Y. 2013) (declining to exercise supplemental jurisdiction over state claim despite the fact that the case had been pending for five years because the case was "not even on 'the eve of the eve of

trial,'" did not involve any "special circumstances," and discovery was incomplete (quoting *Allard v. Arthur Andersen & Co.*, 957 F. Supp. 409, 425 (S.D.N.Y. 1997))); *but see LaChapelle v. Torres*, 37 F. Supp. 3d 672, 688 (S.D.N.Y. 2014) (retaining jurisdiction over state claims when case had been pending in district court for twenty months and the court was already familiar with the "highly-contested and fact-intensive" issues).

In light of all of these considerations, the GBL claim should be litigated in a New York state court, which can best resolve issues of New York law. *See Gibbs*, 383 U.S. at 726-27.

### B. GBL Claim Against CHEPT

CHEPT has elected to interpose an answer rather than move to dismiss the claims against it. Nonetheless, "federal courts have a duty to inquire into their subject matter jurisdiction *sua sponte*." *F5 Capital*, 856 F.3d at 75. In light of the Court's determination that the GBL claim against Similis would substantially predominate over the FDCPA claim, the Court must determine whether an exercise of supplemental jurisdiction over the GBL claim against CHEPT is appropriate. That claim is based on the same rent-jamming and fee-seeking practices as the claim against Similis. *See* FAC ¶¶ 122-30. Therefore, largely for the same reasons that the Court declines to exercise supplemental jurisdiction over the GBL claim against Similis, it also declines to exercise supplemental jurisdiction over the GBL claim against CHEPT. Accordingly, the GBL claims against both Defendants are dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, Similis's motion to dismiss is GRANTED. The GBL claims against both Defendants are dismissed. Similis is dismissed from this lawsuit. The Clerk of Court is

directed to terminate the motion pending at ECF No. 40 and to remove Similis from the list of defendants in this matter.

SO ORDERED.

Dated: May 15, 2018
New York, New York

_____
GREGORY H. WOODS
United States District Judge